**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AUGUST C. GHILARDUCCI, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 08 CV 4872 |
| v. ) | |
| ) | Judge David H. Coar |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner August C. Ghilarducci ("Petitioner") is currently serving a 190 month sentence for his 2004 convictions for racketeering, 18 U.S.C. § 1962, wire fraud, 18 U.S.C. § 1343, money laundering, 18 U.S.C. § 1957(a), making false statements on a loan application, 18 U.S.C. § 1014, and filing a false tax return, 26 U.S.C. § 7206. Pet. for Writ of Habeas Corpus ("Pet.") 1, No. 02 CR 1101 Dkt. ("Dkt.") #1. The convictions stemmed from a fraudulent investment scheme operated by Petitioner and his co-defendant, Ronald J. Richardson, involving the sale of worthless financial instruments to investors. Dkt. #1.

On December 3, 2002, Petitioner waived formal reading of the indictment and entered a plea of not guilty to all charges. Dkt. #6. On June 9, 2003, this Court appointed Gerald Collins to serve as counsel for petitioner. Petitioner was subsequently charged in three superseding indictments. Each time, Petitioner waived formal reading of the indictment and entered a plea of not guilty to all charges. Dkt. #32, 35, 44, 53, 112, 117. A jury convicted Petitioner of all but two counts of the third superseding indictment on December 15, 2004. After his conviction, Petitioner filed a notice of appeal with the Seventh Circuit. Petitioner's appellate attorney, Danial La Fave, filed a motion to withdraw because he could not discern a nonfrivolous basis for

appeal; the motion was granted. *United States v. Ghilarducci*, No. 05-2836 (7th Cir. March 14, 2007). Petitioner's appeal was dismissed, and the United State Supreme Court denied Petitioner's petition for writ of certiorari.

In September 2006, Petitioner filed this *pro se* motion pursuant to 28 U.S.C. § 2255. Petitioner asserts several claims of ineffective assistance of counsel, loosely grouped into three categories, and contends that Collins had (1) failed to review the government's discovery material or interview witnesses prior to trial, (2) failed to engage in plea negotiations with the government, and (3) failed to explain to Petitioner the charges and what the government needed to prove in order to secure a conviction, the unlikelihood of his success at trial and the advantages of pleading guilty, and the Sentencing Guidelines. Pet. 4-7, Mem. 2-5. Petitioner concludes that he was prejudiced by Collins' deficient performance, and that but for Collins' errors, Petitioner would have entered a plea of guilty before the third superseding indictment and pled to a lower sentence than the 190 month term he ultimately received. Pet. 4, 32, 44-45. Petitioner seeks to vacate his conviction and to be resentenced to a reduced term. Petitioner also seeks an evidentiary hearing on his ineffective assistance of counsel claims, and the appointment of representation. Pet. 47-48.

**STANDARD**

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness" and "any deficiencies in counsel's performance [were] prejudicial to the defense . . . . " *Strickland v. Washington,* 466 U.S. 668, 687-88, 692 (1984). With regard to the first prong, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* Courts reviewing claims of ineffective assistance of counsel "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citations omitted). "Judges must not examine a lawyer's error (of omission or commission) in isolation . . . . It is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the Sixth Amendment speaks." *Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009) (citing *Strickland* at 690-96).

Prejudice requires a showing that is a reasonable probability that, but for his lawyer's mistakes, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability means "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also United States v. Wilson,* 237 F.3d 827, 832 (7th Cir.2001) (noting that a "reasonable probability" is not more than 50%). "[W]here an ineffective assistance claim may be resolved based on lack of sufficient prejudice, 'that course should be followed.'" *United States v. Birk,* 453 F.3d 893, 898-899 (7th Cir.2006) (quoting *Strickland*, 466 U.S. at 697).

**ANALYSIS**

1) **Collins' Pretrial Preparation**

Petitioner presents many conclusory statements but little evidence to back his assertion that that Collins failed to properly review discovery materials and interview certain witnesses. Petitioner asserts first that Collins failed to review more than 200,000 pages of documents produced by the government around February 2004. The sole basis for Petitioner's assertion is a

3

letter dated February 6, 2004, from Collins to Harry Drandell, who served as Petitioner's attorney in a contemporaneous criminal case in California for charges stemming from the same underlying fraud. In that letter, Collins wrote Drandell about extending the trial date for the California trial, and noted:

> [W]e still have the discovery issues to resolve. I have enclosed a copy of a letter that have personally received from [the government] along with twelve pages of indexes. I have not personally reviewed the materials in the room in the U.S. Attorney's Office; however, Ghilarducci has, as stated in the letter.

Mem. Ex. A. Petitioner understands this letter to mean that Collins never reviewed these documents. Petitioner argues that Collins' alleged failure to review these discovery documents prevented Collins from understanding the strength of the government's evidence against Petitioner, and therefore preventing Collins from encouraging Petitioner to plead guilty.

Collins' affidavit, attached to the government's response to Petitioner's habeas petition, does not explain his review of the discovery materials. However, in a second letter to Drandell dated February 11, 2004, Collins indicated that he had a least some familiarity with the government's discovery materials. For example, Collins wrote:

> As we have repeatedly discussed, there is an enormous amount of documents, bank records, IRS materials, and correspondence among the investors, the middlemen, and Ghilarducci. While seven banker's boxes of materials have been made available to the defense, none of the materials have yet been organized and marked as exhibits by the government.

Mem. Ex. C.1. Furthermore, the reasonableness of Collins' review of the documents is evidenced by his filings and performance at trial. The pretrial motions that Collins filed on May 6, 2004, suggest that Collins reviewed the discovery materials subsequent to his letters to Drandell: a motion to suppress evidence allegedly obtained illegally from James Baczynski (Dkt. #70), a motion seeking a separate trial on the Petitioner's alleged scheme to defraud investors through the use of railroad bonds (Dkt. #69), and a motion for a bill of particulars directing the

4

government to set forth the amounts of Petitioner's allegedly under-reported income and the sources of the government's allegations of under-reported income (Dkt. #71). Collins' grasp of the evidence was strong enough to file six motions in limine before the trial, three of which were granted, Dkt. #133-34, 136-39, and to present a defense of Petitioner for the nearly two-month long trial held in 2004 before this Court.

Section 2255 of Title 28 of the United States Code governs evidentiary hearings on habeas petitions:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, *grant a prompt hearing thereon,* determine the issues and make findings of fact and conclusions of law with respect thereto.

(emphasis added). Thus, a court must grant an evidentiary hearing on an ineffective assistance of counsel habeas petition when the petitioner alleges facts that, if proven, would entitle him to relief. *Kafo v. U.S.*, 467 F.3d 1063, 1067 (7th Cir. 2006) (internal citations and quotation marks omitted). However, an evidentiary hearing is not required when a petitioner's allegations are "vague, conclusory, or palpably incredible rather than detailed and specific." *Id.* (citing *Bruce v. United States,* 256 F.3d 592, 597 (7th Cir.2001)). Before an evidentiary hearing will be granted, the appellant must provide a detailed and specific affidavit which shows that he has actual proof of the allegations. *Galbraith v. United States,* 313 F.3d 1001, 1009 (7th Cir.2002). Mere unsupported allegations cannot support a petitioner's request for a hearing. *Aleman v. United States,* 878 F.2d 1009, 1012 (7th Cir.1989). In light of the evidence demonstrating Collins' grasp of the discovery materials, the deference with which this Court must view his performance, and Petitioner's sparse evidence of Collins' failure to review the documents, the Court finds an evidentiary hearing is not necessary on this matter.

Petitioner also asserts that "Collins failure to interview Government witnesses in conjunction with his failing to review evidence prevented his assessment of the overwhelming strength of the Government's case." Mem. 19. Petitioner is equally vague in his affidavit, stating that Collins "did not interview any government or defense witnesses, except Ted Grippo." Pet. Ex. R at 4. Collins disputes this claim, stating that he had individually and with Petitioner reviewed the statements, grand jury testimony, and FBI reports of each government witness. Resp. Ex. 1 at ¶ 10. Collins states that co-counsel (representing Petitioner's co-defendant) had telephoned several witnesses, and the results of these interviews had been conveyed to Collins. He additionally notes that "In my opinion, then and now, nothing was gained by these conversations and some witnesses were only aggravated." *Id.* at 11. Collins attempted to reach another witness, who refused to fly in from the South Pacific to testify on behalf of Petitioner. *Id.* at 12. Applying a heavy measure of deference to Collins' judgment not to aggravate the government's witnesses further by interviewing them, this Court concludes that Collins' decision was reasonable. In an ineffectiveness of counsel case, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Collins' decision here was strategic and was grounded in his own investigations into the witnesses and those of co-counsel.

**2) Collins' Alleged Failure to Engage in Plea Negotiations**

Petitioner claims that Collins failed to engage in plea negotiations with the government, despite both the government's plea offer and Petitioner's willingness to cooperate. Mem. 26; Ex.

6

R at ¶ 24, 46.  In his affidavit,[1] Petitioner states that to the best of his knowledge, Collins "never met with the government . . . to discuss cooperation or terms of a guilty plea."  Mem. Ex. R at ¶ 24.  Collins was also allegedly unwilling to discuss with Petitioner even the possibility of a plea; Petitioner states that on numerous occasions during the pretrial phase, Petitioner reiterated to Collins his willingness to plead guilty in order to avoid the indictment of his father and his fiancée, but Collins rejected Petitioner's interest in plea bargaining as coming "too soon."  Mem. Ex. R at ¶ 17.

Petitioner also contends that the government attorney sent Collins a letter on March 3, 2004, offering to discuss a plea bargain prior to the second superseding indictment (amended to include racketeering charges).  Mem. 27, Ex. R at ¶ 21.  Petitioner argues that Collins failed to discuss this letter with Petitioner.  *Id.*  However, there is doubt as to the existence of this letter, as none of Petitioner's trial and appellate attorneys could produce the letter and none recalled its existence.  Petitioner and his fiancée attest to having seen this letter.  Mem. Ex. Q, Ex. R.  Petitioner's correspondence with his trial and appellate attorneys indicate only that the government attorney contacted co-defendant Richardson's counsel regarding co-defendant's interest in entering a plea bargain, not that a similar letter was sent to Petitioner's counsel.  Mem. Ex. E (letter from Daniel La Fave to August Ghilarducci, Oct. 10, 2007); Ex. I (letter from La Fave to Ghilarducci, May 15, 2008).  Collins did not have the alleged letter in his files, but he noted that "almost all the contents of my file was returned to [Collins]" or given to Collins' appellate counsel.  Mem. Ex. G.2.  Collins' appellate counsel Daniel La Fave did not have such a

---

[1] The Court considers only the portions of Petitioner's exhibits relevant to his claims regarding Collins' alleged failures in discovery, plea bargaining, general litigation strategy and advising, and the Sentencing Guidelines, not the numerous other unrelated peccadilloes that Petitioner claims Collins committed.

7

letter in his records. Mem. Ex. E. Petitioner contacted the U.S. Attorney's office for a copy of the letter, but apparently received no response. Mem. Ex. F.

Even if this letter existed, the Court is convinced that Collins' representation did not fall below an objective standard of reasonableness. A defendant can prove that his attorney's performance regarding a plea offer was deficient if he shows that his attorney did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with him." *U.S. v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005). This is a stringent standard that places a heavy burden on defendants. *Id.* (summarizing cases where mischaracterizations of sentencing consequences was not enough to constitute ineffective assistance of counsel) (citations omitted). Where a defendant is uncooperative and unreceptive to a plea, however, counsel's failure to secure a plea bargain or to engage in plea negotiations with the government does not constitute ineffective assistance of counsel. *U.S. v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000) ("[T]he successful negotiation of a plea agreement involves factors beyond the control of counsel, including the cooperation of his client, clearly absent here . . .").

Collins' affidavit describes a very different picture of the plea discussions with Petitioner (or lack thereof) leading up to trial. It describes Petitioner as very unreceptive to Collins' good-faith attempts to engage him in discussions about plea bargaining.

> From time to time during the pendency of the case and before trial, I spoke with the government prosecutor regarding a plea agreement, but whenever I mentioned the possibility of a plea agreement with the petitioner, he showed no interest in dealing with the government and no interest in pleading guilty.
>
> From the time of this meeting up and through the three month trial, the petitioner never mentioned the possibility of the petitioner pleading guilty. In fact, the more that we reviewed the discovery materials, the more confident of success he became.

8

Resp. Ex. 1 at ¶ 6-7. Even if he had received the alleged March 3, 2004 letter with a government's offer to enter into plea negotiations, Petitioner demonstrated no willingness to consider a plea. According deference to Collins decision that his intractable client could not be persuaded to negotiate with the government, this Court finds Collins' actions on this matter to be reasonable.

### 3) Collins' Alleged Failure to Discuss Litigation Strategy with Petitioner

Petitioner also claims that Collins failed to explain to Petitioner the charges and what the government needed to prove in order to secure a conviction, the unlikelihood of his success at trial and the advantages of pleading guilty, and the Sentencing Guidelines. Mem. 2-5.

Petitioner contends, in conclusory and absolute terms, that Collins "never explained . . . the risks of testifying" at trial" (¶ 29), "never discussed . . . nor recommend[ed] . . . the sound logic of entering a plea agreement as a means to reduce sentencing exposure" (¶ 30), "never presented any information or research to the Court nor myself supporting the theory of the contracts as a defense to the charges" (¶ 40), and "never explained the benefit available for accepting responsibility nor did he explain the likely enhancement for perjury and/or obstruction of justice for testifying." *Id.* at ¶ 29. Petitioner states that Collins artificially inflated his confidence in the outcome of his case, so that Petitioner could not make an informed decision about whether to proceed to trial. *Id.* at ¶ 37-39, 43. Petitioner also states that Collins did not explain "the strength of the government's case, the overwhelming conviction rate of the federal government or the incredibly remote odds of winning back-to-back trials against the federal government." *Id*. at ¶ 26.

Collins, on the other hand, states that he told Petitioner in one meeting in late summer or early fall of 2003 that it was counsel's duty to discuss Sentencing Guidelines with him. Collins

9

had a Sentencing Guidelines manual with him at this meeting. *Id.* at ¶ 5. However, before Collins could say anything else, Petitioner told Collins that his previous attorneys had gone through all of the sentencing guidelines with him and that he was quite familiar with the guidelines. *Id.* Petitioner estimated "eight or nine years," which Collins said was consistent with the range that Collins had calculated based on the then-current indictment. *Id.* Petitioner then said that such a sentence was too much time and that he was not interested in any plea agreement. *Id.* Collins tried again to interest the petitioner in discussing the guidelines, but Petitioner refused and stated that the case would proceed to trial. *Id.* Collins also describes Petitioner's controlling behavior during pretrial meetings. These meetings, held in Petitioner's house or on his property, went on for five to seven hours. Collins states,

> At the first meeting, petitioner had prepared a chalkboard with the names of every investor/civilian witness. Like a teacher in a classroom, petitioner stood before the chalkboard. He said that every investor/witness had a story behind them and that he intended to tell each of the attorneys the witness' story.

*Id.* at ¶ 10.

Collins also ascribes the overly optimistic assessments of the outcome of the case to co-defendant's attorney. Collins states that he "never espoused the confidence in success that co-counsel did." *Id.* at ¶ 9. When Collins tried to exercise caution, he states that he was turned away. Indeed, even in Petitioner's affidavit, the optimistic assessments are ascribed to co-counsel, not Collins. Mem. Ex. R at ¶ 37 ("[O]n many occasions . . . [co-counsel Philip] Turner told me categorically 'we will win' . . . . Collins . . . concurred"); ¶ 39 ("On numerous occasions [Petitioner's fiancée] viewed emails sent to me by Turner saying clearly, 'we will win'"). Petitioner's fiancée only affirmed that Turner had stated "We will win," but said nothing about Collins, Mem. Ex. Q, but Petitioner's father stated that "Collins advised [them] that the government had no case against [Petitioner]." Mem. Ex. P. On the other hand, Petitioner's

10

father also stated that Petitioner told him that "they were not even discussing a plea bargain, that the government case was not strong and that he would testify and explain everything to the jury." Mem. Ex. P. This account squares with Collins' description of Petitioner's homegrown overconfidence.

This portion of Petitioner's claim, then, boils down to a he-said/he-said dispute: Petitioner argues that Collins failed to communicate about very basic elements of the litigation; Collins returns by describing Petitioner as adamant and unwilling to listen during strategy discussions with his attorney. But Petitioner's claims are unsupported blanket allegations of Collins' failure that this Court finds palpably incredible and therefore undeserving of an evidentiary hearing. This Court finds that Collins' counsel was reasonable for much the same reasons as described above: an obstinate client unwilling to cooperate with counsel's suggestions before the trial cannot assert an ineffective assistance of counsel argument afterward. In light of how Collins describes Petitioner's obduracy, Collins' actions were reasonable.

## CONCLUSION

For the foregoing reasons, Petitioner's motion under 28 U.S.C. § 2255 is **DENIED** in its entirety.

Enter:

                                            <u>/s/ David H. Coar</u>
                                            David H. Coar
                                            United States District Judge

**Dated:** May 11, 2009